# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00779-CR

**David Gosnell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 9024185, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

David Gosnell appeals from his conviction for the felony offenses of aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. *See* Tex. Pen. Code Ann. §§ 22.021, 21.11(a)(1), (2) (West 2003). After a jury trial, the court assessed sentence at imprisonment for twenty-five years, fifteen years, and ten years respectively. In one issue on appeal, appellant contends that "the jury erred in finding appellant guilty beyond a reasonable doubt." We will affirm the conviction.

### Factual and Procedural Background

In September 2001, teacher Kimberly Bird received information from Kathleen Eaton, the grandmother of K.A., the complainant. That information led Bird, who had formerly conducted

forensic interviews for the Austin Police Department, to suspect sexual abuse. She received Eaton's permission to talk to K.A. about that subject. The next day, during their conversation, Bird noticed that K.A. was very nervous as she told Bird that appellant had touched her "down there" and showed her his "thing." K.A. said this happened while her mother was sleeping, snoring in the next room. K.A. also said that appellant would sometimes come into the bathroom and "rub her chest." She said appellant touched her more than once, and also said that she feared being "whipped" by appellant if she told.

K.A., the complaining witness, was eleven years old at the time of trial. The incidents occurred in the summer of 2001, when she was ten. K.A. testified that appellant touched her between the legs with his "dick" under her clothes. He also touched her breast with his penis, which scared her. When she tried to get away, he backed her into a closet. Her mother was snoring in her own room while these incidents occurred. K.A. also said that appellant had hit her with a belt in the past, and threatened to do so if she told her mother what was happening.

Although no court order was in place concerning custody, K.A. lived with her grandmother, Kathleen Eaton. Eaton testified that K.A. kept waking up crying and suffered a number of symptoms such as earaches and headaches, but the doctor could not find any illness. She found K.A. masturbating a lot, and tried to redirect her into going outside and playing with other children. K.A. became reluctant to visit her mother and appellant on weekends.

A Child Protective Services (CPS) caseworker, Ayesha Anthony, testified that Stephanie Gosnell, K.A.'s mother, was indifferent to K.A. She also said that there were several

2

occasions during Gosnell's visits when Gosnell was seen whispering to K.A. Anthony intervened because she was afraid that Gosnell might be trying to pressure K.A. into recanting the allegations against appellant.

Sharon Soliz, a detective with the Austin Police Department, investigated the case and concluded charges should be filed. She became concerned that Cindy Mock, a cousin of appellant's, was talking to K.A. The Department has a general policy of allowing a child victim's relatives to listen to the child, but not to question or "cross-examine" her in order to avoid suggesting anything to the child that would influence her later testimony. Because of Mock's relationship to appellant, Soliz was concerned that Mock would try to make K.A. feel guilty about what was going to happen to appellant so that she would change her story. Soliz was concerned enough to warn Mock that witness tampering was a crime.

William Carter, a psychologist, testified to the general dynamics of sexual abuse situations. Matthew Ferrara, a forensic psychiatrist, testified about interviewing appellant and administering certain psychological tests to him.[1] He said that appellant told him about an incident when appellant inadvertently exposed his penis to K.A. through a slit in his boxer shorts. Appellant also told him that he "wrestled" with K.A., but had never had any kind of sexual contact with her. He said he wrestled and tickled "all the kids."

---

[1] The tests were actually administered in connection with CPS concerns about custody of the children. Ferrara was not permitted to testify about the test results at trial.

Stephanie Gosnell, K.A.'s mother, testified for the defense. She said that the alleged crimes could not have occurred because appellant was never alone with K.A. The only incident of "exposure" she could recall was a time when appellant spanked K.A. while he was wearing boxer shorts and his penis showed through the slit in the boxers. On cross-examination, Gosnell said that after her children were placed in the custody of CPS, a caseworker instructed her to stop ignoring K.A. during her parental visits; Gosnell admitted that she told the caseworker that she wanted to give up K.A. but keep her other three children. Gosnell was not married to appellant at the time of the events with K.A. but later married him. At the time of trial, she had surrendered custody of all four of her children.

Appellant's cousin, Cindy Mock, also testified for the defense. She said that she and appellant had "grown up together" in that their grandmother took care of them during the day. She said that K.A. recanted her allegations during a phone conversation that Mock taped. Mock first talked to Eaton, asking her if she would be interested in getting full custody of K.A. in exchange for K.A. "telling the truth if the allegations were a lie." Eaton then allowed Mock to talk to K.A. At first, K.A. stuck to the same story that appellant had placed his "thingy" in her. Then Mock explained to K.A. that appellant had never "hit on" Mock even though she had been a model, and told K.A. that she, Mock, "didn't live too far from K.A." In response to Mock's questions whether K.A. made up the allegations, K.A. answered, "Uh-huh, uh-huh," seemingly recanting her allegations. On cross-examination, Mock admitted that she pressured K.A.

4

**Discussion**

In one issue on appeal, appellant contends that "the jury erred in finding appellant guilty beyond a reasonable doubt."[2] The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). All the evidence that the jury was permitted to consider properly or improperly must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). On appeal, we do not reevaluate the credibility of the witnesses or realign, disregard, or weigh the evidence. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Every fact need not point directly and independently to the defendant's guilt. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances. *Connor v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Vanderbilt*, 629 S.W.2d at 716.

To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We must review the evidence

---

[2] Although appellant appears just to raise a legal sufficiency issue, the relief requested (only a remand for new trial) and the reliance on the evidence presented by defendant as outweighing the State's evidence, are more relevant to a factual sufficiency issue. Accordingly, in the interest of justice, we consider both legal and factual sufficiency. The State's brief addresses both aspects.

weighed by the jury tending to prove the existence of the elemental fact in dispute and compare it to the evidence tending to disprove that fact. *Id*. The appellate court may find either that the State's proof of guilt was so obviously weak as to undermine confidence in the jury's determination or that the finding of guilt was against the great weight and preponderance of the evidence. *Id*. at 11. When the defendant proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone, is greatly outweighed by the defendant's evidence. *Id*. However, a factual sufficiency review must be appropriately deferential to avoid substituting our judgment for that of the jury. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Unless the available record clearly indicates a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give to contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor. *Johnson*, 23 S.W.3d at 8. We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. *Id*.

Appellant argues that the testimony of Gosnell and Mock shows the insufficiency of the State's case. Gosnell testified that K.A. and appellant were never alone. However, K.A. did not allege that the incidents happened while Gosnell was absent but while Gosnell was asleep, as shown by her snoring. Gosnell admitted that with a newborn infant sleeping in her room, her sleep was disrupted, so the jury could have believed K.A.—her mother was sleeping during these incidents. Given Gosnell's testimony that she wanted to surrender custody only of K.A., a rational jury could have inferred that Gosnell was angry with K.A. because her allegations resulted in appellant going to jail, and that Gosnell had a motive to lie in order to free her husband.

6

Mock testified about K.A.'s recantation. The tape of her conversation with K.A. was played to the jury. However, even when a recantation is supported by an affidavit, which this one was not, the jury is still entitled to disbelieve the later statement and accept the earlier testimony as true. *See Banda v. State*, 727 S.W.2d 679, 682 (Tex. App.—Austin 1987, no pet.). The jury could have believed that Mock pressured the child into agreeing with Mock's version of events. (In fact, the jury may well have believed that Mock essentially threatened K.A. by telling her that Mock "didn't live too far from [her].") The jury also knew that Mock had been warned about witness tampering.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found appellant guilty beyond a reasonable doubt. K.A. testified about appellant's acts. The jury was not obligated to believe the explanation offered by K.A.'s mother, and it was entitled to believe the first version of K.A.'s story that she told to her teacher and on the witness stand. We do not reevaluate the credibility of the witnesses or reweigh the evidence. *See Adelman*, 828 S.W.2d at 421.

In viewing the evidence in a neutral light, we hold it factually sufficient. In essence, appellant asks that we believe his version of events, not the State's. The jury, as the judge of the credibility of the witnesses could have believed Gosnell and Mock were solely interested in protecting appellant and found their credibility wanting. We find nothing in the record that would alter our deference to that determination. *See Johnson*, 23 S.W.3d at 8. We do not conclude that the finding of guilt was based on obviously weak evidence or was against the great weight and preponderance of the evidence. *Id.* at 7.

7

We overrule appellant's sole issue and affirm the conviction.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   August 14, 2003

Do Not Publish