**Johnny Ray CONNER, Appellant,**

v.

**The STATE of Texas.**

**No. 73,591.**

Court of Criminal Appeals of Texas.

Sept. 12, 2001.

Rehearing Denied Oct. 24, 2001.

Leora Teicher Kahn, Houston, for Appellant.

Alan Curry, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## *OPINION*

MEYERS, J., delivered the opinion of the Court, joined by KELLER, P.J., PRICE, JOHNSON, KEASLER, HERVEY, and HOLCOMB.

Appellant was convicted of capital murder in June 1999. TEX. PENAL CODE ANN. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises nineteen points of error including challenges to the sufficiency of the evidence at both stages of trial. The sufficiency points will be addressed first followed by the remainder of the points in the order in which they are raised. We affirm.

In May 1998, the victim, Kathyanna Nguyen, lived with Tony Tostado behind her grocery store in north Houston. Tostado owned a restaurant located next door to the grocery. On the afternoon of May 17, 1998, Tostado ate lunch with Nguyen and then went over to his restaurant to clean up. Shortly thereafter, Julian Gutierrez stopped by the grocery to get some gas. After pumping the gas, Gutierrez entered the store to pay and heard someone say, "Give me all your money." Gutierrez looked up from counting his own money, to see a man pointing a gun at Nguyen's chest. When the robber saw Gutierrez, he turned and pointed the gun at him. Gutierrez dropped the money he was holding and ran from the store. As Gutierrez ran, the robber fired the gun at him, hitting him in the shoulder. Hearing several more gunshots, Gutierrez turned to see the robber shooting at Nguyen. Gutierrez later identified appellant as the robber.

Hearing gunshots, Tostado locked the doors to his restaurant and hurried over to the grocery. Upon entering the store, Tostado saw a man with a gun. Although Tostado attempted to grab the assailant, the man was able to get out of the store and run away. Tostado then saw Nguyen on the floor behind the counter bleeding profusely. He immediately called "911." Other individuals who were outside nearby businesses saw the assailant as he fled the grocery, and several noted that the man was holding his hand underneath his shirt as he ran. Agnes Hernandez, who was stopped at a nearby intersection in her vehicle, decided to follow the robber to see where he went.

Christine Flores was also driving in the area when she saw a man running down the street and had to slow down in order to avoid hitting him. The man looked directly at Flores as he ran. Flores later identified the man as appellant. Finally, Michael Hamilton was driving with his wife, Martha Meyers, near the scene when they saw a man running from the grocery. As the man crossed the road in front of them, he turned to look back towards the grocery store at which time Meyers was able to see his face. Hamilton and Meyers followed Hernandez as she followed the fleeing suspect. The assailant ran for some distance before he reached a vehicle, got inside, and drove away. Hernandez continued to follow the assailant, seeing him almost run over a man and child as he sped away. Eventually, the suspect made his way to a freeway feeder road where he drove over the grass median to enter the freeway. Hernandez did not follow the vehicle onto the freeway, but returned to

---

**1.** Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

the scene and told Tostado the direction in which the vehicle had fled.

At the scene, Tostado and several others entered the grocery to help Nguyen. Several witnesses noted that there was money scattered and a great deal of blood on the floor around Nguyen's body. The cash register was open and there was blood inside the drawer. The police also discovered a juice bottle on the floor near the counter from which they recovered appellant's fingerprint.

When the investigation of the crime narrowed to focus on appellant, appellant's photograph was included in a photo spread of suspects for witnesses. Three separate witnesses identified appellant from the photo spread. Appellant turned himself in to the Harris County Jail on June 17, 1998.

At the punishment phase of trial, the State proved up appellant's commission of various prior offenses including possessing cocaine in January, 1991; breaking into a school in June, 1991; attempting to rob an individual in July, 1994; and committing several instances of domestic abuse involving two separate women in 1995 through 1997.

■■■ In his seventh point of error, appellant claims the evidence is insufficient as a matter of law to support his conviction for capital murder because the State failed to prove that the victim was killed during the course of a robbery or attempted robbery, as alleged in the indictment. Specifically, appellant argues that the State failed to prove he intended to take complainant's property before he killed her. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. We determine whether any trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866,

867 (Tex.Crim.App.1988). When conducting a sufficiency review, we consider all the evidence admitted, whether proper or improper. *Garcia v. State,* 919 S.W.2d 370, 378 (Tex.Crim.App.1994); *Chambers v. State,* 805 S.W.2d 459, 460 (Tex.Crim. App.1991). Every fact need not point directly and independently to the defendant's guilt. *Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances. *Id.* at 716.

■■■ To prove appellant committed capital murder, the State was required to show that appellant intentionally caused Nguyen's death while in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp.1995). For murder to qualify as capital murder under section 19.03, the killer's intent to rob must be formed before or at the time of the murder. *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim. App.1995). Proof of robbery committed as an afterthought and unrelated to a murder is not sufficient evidence of capital murder. *Id.* at 207. If there is evidence, however, from which the jury could rationally conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the State has proven that the murder occurred in the course of the robbery. *Id.* at 207; *Robertson v. Texas,* 871 S.W.2d 701, 706 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). The jury may infer the requisite intent from the conduct of the defendant. *Alvarado,* 912 S.W.2d at 207; *Robertson,* 871 S.W.2d at 706.

When viewed in the light most favorable to the verdict, the evidence shows that as Gutierrez walked into the grocery, he heard a man say, "Give me all your money." Gutierrez looked up from counting his own money to see appellant pointing a gun at Nguyen. Gutierrez then dropped his cash, and fled the store. As Gutierrez fled, he turned to see appellant shooting Nguyen. Because there was no evidence of any of the money taken from the cash register, and Mr. Gutierrez's cash was not present at the crime scene when the police arrived, appellant asserts that the State failed to prove he was robbing Nguyen and not Gutierrez. However, given the evidence that appellant was seen pointing a gun at Nguyen, that money was found scattered around Nguyen's body, and that blood was found in the cash register, a rational jury could have concluded that appellant shot Nguyen in the course of robbing or attempting to rob her. Point of error seven is overruled.

In his eighth point of error, appellant contends the evidence is factually insufficient to support his conviction. *See Jones v. State,* 944 S.W.2d 642, 647 (Tex. Crim.App.1996), *cert. denied,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). Appellant argues that because the State failed to prove that the complainant was killed during the course of the robbery or attempted robbery of the complainant, as alleged in the indictment. In a factual sufficiency review, this Court views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson v. State,* 23 S.W.3d 1 (Tex.Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

In conducting such a review, we begin with the presumption that the evidence is legally sufficient under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Next, we consider all of the evidence in the record, comparing the evidence which tends to prove the existence of the elemental fact in dispute to the evidence which tends to disprove it. *Santellan v. State,* 939 S.W.2d 155 (Tex. Crim.App.1997); *Jones,* 944 S.W.2d at 647. We are authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, but must avoid substituting our judgment for that of the fact-finder. *Santellan,* 939 S.W.2d at 164; *Jones, supra.* A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Santellan* and *Jones,* both *supra.*

In the instant case, the facts that support legal sufficiency of the evidence also render it factually sufficient, and appellant has shown no evidence controverting this conclusion. No evidence exists in the record which tends to disprove the fact that appellant murdered Nguyen as he robbed or attempted to rob her. Mere speculation will not support appellant's argument. Because the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, we hold the evidence supporting the conviction to be factually sufficient. *See Santellan, supra* and *Clewis,* 922 S.W.2d at 129. Point of error eight is overruled.

In point of error nine, appellant claims the evidence was legally insufficient to support the jury's affirmative answer to the first punishment issue, concerning his future dangerousness. Under the first punishment issue, the jury was asked to determine "whether there is a probability that the defendant would com-

mit criminal acts of violence that would constitute a continuing threat to society." Art. 37.071, §§ 2(b)(1). The State had the burden of proving beyond a reasonable doubt that there is a probability that appellant, if allowed to live, would commit criminal acts of violence in the future, so as to constitute a continuing threat, whether in or out of prison. *Narvaiz*, 840 S.W.2d at 424. In its determination of the issue, the jury was entitled to consider all of the evidence presented at both the guilt and punishment stages of trial. *Valdez v. State*, 776 S.W.2d 162, 166–67 (Tex.Crim. App.1989), *cert. denied*, 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990). As an appellate court reviewing the jury's finding, we view all of the evidence before the jury in the light most favorable to its finding, and then determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that the answer to the first punishment issue was "yes." *Harris v. State*, 738 S.W.2d 207, 225–26 (Tex.Crim.App.1986), *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

■ Viewed in the necessary light, the evidence at the punishment stage established that appellant committed several offenses over the preceding years including robbery, assault, and aggravated assault. The State also showed that appellant had committed various offenses as a juvenile including breaking into an elementary school and possessing illegal drugs. Despite his prior offenses, Appellant turned himself in to the authorities on the advice of his stepfather a couple of days after the murder. During the punishment phase, appellant's family testified that he was not a violent person, they were surprised to hear about the murder and did not believe appellant was capable of doing such an act. The family members believed appellant could be rehabilitated. Appellant cried during his mother's testimony, and apologized to the victim's family before his sentencing. Appellant was an above average student, and received his college diploma at Houston Community College. Based on the totality of the evidence presented at trial, a rational jury could have found beyond a reasonable doubt that appellant is dangerous and that the answer to the first punishment issue is "yes." *Jackson* and *Allridge*, both *supra*. Point of error nine is overruled.

■ In his tenth point of error, appellant argues the evidence is factually insufficient to sustain the jury's affirmative answer to the future dangerousness punishment question. See Art. 37.0711 § 3(b)(2). In *McGinn v. State*, we determined such a review is not constitutionally required and refused to extend *Clewis* to the punishment issues in capital cases. 961 S.W.2d 161 (Tex.Crim.App.), *cert. denied*, 525 U.S. 967, 119 S.Ct. 414 (1998). Appellant has made no argument to sway us from this holding. Point of error ten is overruled.

■ Appellant's eleventh point of error is an extension of his sufficiency claim set out in his ninth point of error, *supra*. Specifically, appellant submits that imposition of the death penalty where the evidence is legally insufficient to prove him to be a continuing danger to society violates his federal due process rights. Appellant is correct that imposition of the death penalty would violate his constitutional rights absent sufficient evidence. However, because we have found that legally sufficient evidence exists, appellant's claim has no merit. *See* point of error nine, and *Jackson* and *Allridge*, supra. Point of error eleven is overruled.

In points of error one through six, appellant asserts that the trial court violated his due process rights in admitting evi-

dence of three different witnesses' out-of-court identification of him in that the photo spread used was "unduly suggestive." Specifically, appellant asserts that the photo spread was unduly suggestive because appellant's photograph was the only photograph that reflected police booking numbers. Hence, witnesses would necessarily infer that the person depicted in this photograph had previously been arrested and had a criminal history.

In considering the scope of due process rights afforded a defendant with regard to the admission of identification evidence, the United States Supreme Court has held that a pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Barley v. State*, 906 S.W.2d 27, 33 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996). Hence, the Supreme Court formulated a two-step analysis to determine the admissibility of an in-court identification: 1) whether the out-of-court identification procedure was impermissibly suggestive; and, if suggestive, 2) whether that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Barley*, 906 S.W.2d at 33. An analysis under these steps requires an examination of the "totality of the circumstances" surrounding the particular case and a determination of the reliability of the identification. *Id.*

 While appellant is correct in noting that his photograph is the only one in the photo spread which shows the booking numbers, he is not correct in asserting

that the booking numbers would necessarily taint a witness' identification. Indeed, four of the other photographs showed other parts of the Houston Police Department booking card, and in the sixth photograph, the person was depicted standing against a height indicator.[2] Hence, a witness could make the same assumptions about all six of the persons depicted. Furthermore, all of the pictures in the photo spread depict men with similar features and characteristics. Finally, although some of the witnesses claimed to have observed appellant at the scene for only several seconds, all of the witnesses testified at the suppression hearing that the suspect they identified in the photo spread was undoubtedly the person they had seen running from the scene of the crime.

Under the totality of the circumstances in the instant case, the trial court did not abuse its discretion in holding that the out-of-court identification procedures were not impermissibly suggestive and did not cause the witnesses to misidentify appellant. Points of error one through six are overruled.

Appellant complains in his twelfth point of error that the trial court erred in allowing the testimony, at punishment, of Officer R. Perkins, "that appellant's tattoos were gang-related and indicia of his membership in a gang where there was no evidence that appellant was a member of any gang, aspired to further the activities of a gang, or that the underlying offense was motivated by or related to any gang membership or activity." Appellant contends the testimony was irrelevant and prejudicial.

 At the punishment phase of appellant's trial, the State called R. Perkins, an officer with the Houston Police Department, Criminal Intelligence Division,

---

**2.** Appellant is not standing against a height indicator in his photograph.

Street Gang Unit. Perkins testified that he had experience, training, and education in the area of street gangs and gang intelligence. He stated that known gang members are "documented" by officers in the police department gang unit. He testified that they also document tattoos worn by gang members. He further testified that in the course of this work, he had therefore learned to interpret the significance of various types of tattoos. Perkins then interpreted the meaning of appellant's three tattoos which were shown on photographs presented by the State and admitted as exhibits. With respect to a teardrop tattoo on appellant's face:

> [Prosecutor] Q. [L]et's start with the teardrop tatoo [sic]. What is the significance or meaning of that tatoo [sic] as has been your experience as a gang intelligence officer?
>
> [Appellant] A.... There are several meanings to the teardrop.... One is for loss of a homeboy or friend. One particular reason is for how many times you've been to the jail. And one time it is noted as this is the last time I'll ever cry.

He further testified as to the Mickey Mouse tattoo:

> Q. [C]an you tell me what the significance of—based on your training and experience, of that tatoo [sic]?
>
> A.... That tatoo [sic] is a Mickey Mouse character, crazed out. The eyes are crossed, it's holding a gun and a knife, and the gun is smoking, which a lot of times is memory a high-jacker [sic], meaning I'll take your gun with a knife or with a gun, whatever it takes.

Finally, Perkins explained the MOB tattoo:

> Q. And with regard to ... Money Over Bitches, what is the significance of that tatoo [sic] as you interpret it, based on your experience as a gang intelligence officer?

> A. Money Over Bitches on the tatoo [sic] is typical of the black street gang. It means that women are second class citizens. It means money comes first.

Appellant argues that Perkins' testimony is irrelevant because it gave the jury "the distinct impression that Appellant was a violent member of a 'black street gang,'" when there was no evidence connecting appellant to membership in a gang or to gang activity.

■ At the punishment phase of a criminal trial, evidence may be presented as to any matter that the court deems relevant to sentencing, including evidence of the defendant's background or character. Art. 37.071 § 2(a). A defendant's choice of tattoos, like his personal drawings, can reflect his character and/or demonstrate a motive for his crime. *See King v. State*, 29 S.W.3d 556, 565 (Tex.Crim.App.2000)(appellant's tattoos and drawings were evidence of appellant's hatred for African–Americans and his motive in committing the murder); *Banda v. State*, 890 S.W.2d 42, 61 (Tex.Crim.App.1994)(tattoo of word "Satan" was evidence that defendant believed that Satan was telling him to kill people), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Corwin v. State*, 870 S.W.2d 23, 35 (Tex.Crim.App.1993)(recognizing that defendant's drawing had "an inferential bearing on his character for violence, which relates in turn to the question of future dangerousness"). We hold Perkins' testimony concerning the meaning behind appellant's tattoos was relevant to appellant's character and hence to punishment.

Appellant characterizes Perkins' testimony as "regarding the significance of Appellant's tattoos *as indicia of gang membership and gang-related conduct.*" (Emphasis added). But this is a misrep-

resentation of the nature of most of Perkins' testimony. In just one instance did Perkins suggest that one of appellant's tattoos might have some connection with gang membership. When describing the Money over Bitches tattoo, Perkins stated such tattoo was "typical of the black street gang." He went on to explain its meaning: "It means that women are second class citizens. It means money comes first." Perkins did not state that appellant's wearing of such tattoo meant that he was a member of a "black street gang" or state that only gang members wear such tattoos. Perkins did not otherwise suggest that appellant's other tattoos had any connection with gang membership or gang activities.

■■■■ Appellant also complains that even if relevant, Perkins' testimony was more prejudicial than probative. Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

This rule favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Jones*, 944 S.W.2d at 652–53. Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Id.* Given that Perkins' testimony was brief and general in nature, we cannot say that the judge abused his discretion in holding that any prejudicial effect of the testimony offered did not substantially outweigh its probative value. *Id.* Point of error twelve is overruled.

■■■ In points of error thirteen through seventeen, appellant claims the trial court committed reversible error by overruling his motion for new trial without a hearing. More specifically, appellant contends that the trial court and the State denied him the effective assistance of counsel and due process of law by instructing jurors after trial that they were not obligated to discuss their service with defense counsel. Because jurors thereafter refused to speak with appellant's counsel, appellant now contends that his counsel was unable to investigate statutory grounds for a new trial. *See* Tex.R.App. P. 21.3 (grounds for a new trial in criminal cases).

In *Jackson v. State*, 992 S.W.2d 469, 475–76 (Tex.Crim.App.1999), we noted that our case law clearly holds that "[t]he refusal of any or all of the jurors, after their discharge, to talk to appellant's counsel or to sign affidavits relating to conduct in the jury room violates no statute and does not authorize reversal." We also noted that no error occurs when jurors are informed that they are under no obligation to talk to defense counsel. *Id.* Counsel had the right to pursue an investigation on appellant's behalf and nothing prevented him from contacting the jurors and attempting to elicit information from them. However, nothing in the law obligated the jurors to cooperate with the defense investigation either. *See id.* Appellant was not deprived of the effective assistance of counsel or due process of law because he was not prevented from doing something he had the legal right to do. *Jackson*, 992 S.W.2d at 475–76; *see also Tong v. State*, 25 S.W.3d 707, 714 (Tex.Crim.App.2000). Points of error thirteen through seventeen are overruled.

In his eighteenth point of error, appellant claims the capital punishment sentencing scheme is unconstitutional and amounts to cruel and unusual punishment because the jury's decision regarding each

of the punishment issues is not subject to meaningful appellate review. Appellant complains in his nineteenth point of error that the "10–12" rule of the capital sentencing scheme is likewise unconstitutional.

The United States Supreme Court and this Court have held that the Texas death penalty scheme passes constitutional muster. *See generally Jurek v. Texas*, 428 U.S. 262, 269, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). In addition, this Court has previously addressed and rejected these particular complaints. *See McFarland v. State*, 928 S.W.2d 482, 498, 519 (Tex.Crim. App.1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997); *Lawton v. State*, 913 S.W.2d 542, 557 (Tex.Crim. App.1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). Appellant's eighteenth and nineteenth points of error are overruled.

The judgment of the trial court is affirmed.

WOMACK, J., concurs in point of error ten and otherwise joins the opinion.