# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00565-CR

**Antonio Rogers, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE CRIMINAL DISTRICT COURT 3 OF TARRANT COUNTY
### NO. 0795630A, HONORABLE DONALD LEONARD, JUDGE PRESIDING

A jury convicted appellant Antonio Rogers of burglary of a habitation with intent to commit kidnapping and the district court assessed punishment at ten years in prison. *See* Tex. Pen. Code Ann. ' 30.02 (a)(1) (West Supp. 2002). Appellant contends on appeal that the evidence is legally insufficient to support his conviction.[1] We conclude that the evidence is legally sufficient and we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

In early 2001, the complainant, Candida Chavira, and her baby daughter lived with her parents in an apartment complex in Euless. After living with Delphino Romero, the father of her daughter,

---

[1] The indictment charged appellant with four counts of burglary of a habitation, setting out three means by which he committed that offense, *i.e.*, burglary with the intent to commit kidnapping, theft, and assault of Mr. and Mrs. Chavira.

for approximately a year, Candida left with the baby and moved into her parents= home. Romero began making threats against the Chavira family. In the early morning hours of February 1 2001, Romero, together with appellant and three other individuals, drove to the Chaviras= apartment complex. One of the individuals looked inside the Chaviras= window. The driver of the car, Crystal Davis, then knocked on the Chaviras= door. As Mr. Chavira opened the door, Davis ran back to the car. Wearing bandannas over their faces, appellant and two other male individuals beat Mr. Chavira on his face and chest, leaving him with a broken nose and fractured rib, and knocked Mrs. Chavira unconscious. After entering the apartment, Romero went to Candida Chavira=s bedroom where she was asleep with her daughter. He then grabbed the baby in one hand and Candida in the other, rushing them out the door and into the waiting car.

Davis dropped Romero, Candida, and the baby off at a nearby shopping center parking lot where Romero had left his truck. Romero took Candida and the baby to Mexico and kept them there for over three weeks. Through Romero=s father, Mr. Chavira arranged their release and picked them up at a bus station in Monterrey, Mexico.

## DISCUSSION

Appellant argues that Candida=s testimony Ais riddled with problems@ and consequently the evidence is legally insufficient to establish his intent to commit an abduction. At trial, appellant sought to show on cross-examination of the State=s witnesses that no kidnapping occurred and the complainant left the apartment voluntarily with Romero and the others.

2

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. We determine whether any trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). When conducting a sufficiency review, we consider all the evidence admitted, whether proper or improper. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Chambers v. State*, 805 S.W.2d 459, 460 (Tex. Crim. App. 1991). Every fact need not point directly and independently to the defendant=s guilt. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances. *Id*. On appeal, we do not reevaluate the weight and credibility of the evidence; rather, we consider only whether the jury reached a rational decision. *Hines v. State*, No. 1026-01, slip op. at 5, 2002 Tex. Crim. App. LEXIS 160, at *10-11 (Tex. Crim. App. May 22, 2002); *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

To prove appellant committed burglary with intent to commit kidnapping, the State must show that, without the effective consent of the owner, appellant entered the habitation intending to kidnap. *See* Tex. Pen. Code Ann. ' 30.02(a)(1). A person commits the offense of kidnapping when he knowingly or intentionally abducts another person. *Id*. ' 20.03(a) (West 1994). To Aabduct@ means to restrain a person with intent to prevent her liberation by either secreting or holding her in a place where she is not likely to be found, or using or threatening to use deadly force. *Id*. ' 20.01(2) (West Supp. 2002). ARestrain@ means to restrict a person=s movements without consent, so as to interfere substantially with the

3

person=s liberty, by moving the person from one place to another or by confining the person. *Id.* '
20.01(1). Such restraint is Awithout consent@ if it is accomplished by force, intimidation, or deception. *Id.* '
20.01(1)(A). For a jury to find that a person=s liberty has been substantially interfered with, the State is not
required to prove that a defendant moved his victim a certain distance or that he held his victim a specific
length of time. *See Hines*, 2002 Tex. Crim. App. LEXIS 106, at *8.

Intent, as an essential element of this offense, must be proved by the State beyond a
reasonable doubt; it may not be left simply to speculation and surmise. However, the jury is exclusively
empowered to determine the issue of intent, which may be inferred from the defendant=s conduct and
words, and the surrounding circumstances. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982).

At trial, Crystal Davis and Candida Chavira testified to appellant=s role in the events.
Pursuant to a plea bargain,[2] Davis testified to the manner in which Romero assembled the individuals who
participated in the events of February 1. Davis described how Romero solicited her to act as a lookout and
driver of the getaway car. She testified that on the day in question she met appellant at a gas station when
he arrived with Romero in Romero=s truck. At the gas station, Romero gave Davis five dollars for gas and,
along with her boyfriend and sister, she followed Romero to an abandoned parking lot. At the parking lot,
Romero, appellant, and two other males left Romero=s truck and got into Davis=s car. Davis stated that, in
appellant=s presence in her car, Romero described how the group would Akick in somebody=s door@ and
steal an Ozarka water bottle containing money. She observed her passengers, including appellant, prepare

---

[2] Davis received deferred adjudication for the offense of burglary of a habitation with intent to
commit kidnapping.

4

for the dynamic entry of the apartment by wrapping their hands in duct tape and wearing bandannas on their faces. In response to Romero=s desire to hurry and get the encounter over with, appellant urged Romero Ato make sure he knew what he was doing before he just ran in there.@

Davis told how the four men, including appellant, lined up along the wall to push in the Chaviras= door when it opened. She testified that she knocked on the Chaviras= door so that the Chaviras would not see Romero or the other males. She saw the assailants as they started to force their way into the apartment, and then she ran back to the car to prepare for immediate departure.

Mr. Chavira testified that after he heard someone knocking and he opened his door, three individuals forced their way into his residence, beat him with their fists and then turned on his wife, who they beat unconscious. Candida Chavira testified that she awoke to noise and Acommotion@ in the living room. As Romero rushed into the bedroom, he grabbed the baby and pulled her out of the apartment, advising her AI told you not to fC with me.@ She testified that she was Ascared@ when Romero grabbed the baby and when she saw her mother on the floor. One of the other males shoved her into the waiting car. She identified appellant as one of the individuals in the car; she knew appellant because he was Romero=s close friend. The complainant was wearing pajamas and she had no change of clothes, glasses, diapers or food for her baby, or her inhaler for a medical condition.

Davis testified that she witnessed appellant and the other two males run back to the car together.[3] When Romero, appellant, and the other two males returned to the car, she heard appellant and

---

[3] A neighbor testified that he called 911 when he saw three unidentified men run from the Chavira apartment.

5

one of the males say they Afought@ Mr. Chavira. Davis described how, at Romero=s direction, she drove away fast. She dropped off Romero, Candida, and the baby at his truck, and then dropped the others off at various locations. She dropped appellant off last. Candida testified that she was subsequently held in Mexico for three weeks against her will and that her father, with the assistance of the police and the FBI, obtained her release.

Viewed in the light favorable to the verdict, the evidence supports the jury=s conclusion that appellant entered the habitation, without the effective consent of the owner, with the intent to abduct the complainant. Although the evidence does not establish that appellant was aware of or participated in the full extent of the scheme to transport the complainant and her baby to Mexico, the evidence establishes that the assailants restrained Candida when they shoved her into the getaway car. *See Santellan v. State*, 939 S.W.2d 155, 163 (Tex. Crim. App. 1997) (holding that the act of loading victim in car and driving away was sufficient to constitute Arestraint@ under kidnapping statute); *see also Hines*, 2002 Tex. Crim. App. LEXIS 106, at *11-12. Moreover, the State need only prove that appellant had the requisite intent, not that he accomplished the restraint. The evidence shows that appellant expressed his desire to participate in the forcible entry of the Chaviras= apartment, and prepared for the entry of the apartment by protecting his knuckles with duct tape and wearing a bandanna. He also expressed a desire to make sure the participants knew what they were going to do, and he participated in the actual abduction. Reviewing all the evidence, we hold that a rational juror could have found that appellant entered the habitation with the intent to commit kidnapping.

6

# CONCLUSION

Appellant=s claim that the evidence is not legally sufficient is without merit. Appellant=s point of error is overruled and the judgment is affirmed.

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: June 6, 2002

Do Not Publish

7