NO. 07-03-0302-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 13, 2004
_____

JOSE INEZ CARRIZALES, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-99L-112; HON. H. BRYAN POFF, PRESIDING
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Jose Inez Carrizales, Jr. (appellant) appeals his conviction for theft of cattle. Via a single issue, appellant contends the evidence was legally insufficient to "prove the requisite intent to deprive the owner of his property at the time the property was obtained." We affirm.

### *Background*

Jason Jesko (Jesko) testified that in August of 1999 he worked for Barrett & Crofoot (Barrett), a feedyard. Jerry Garcia (Garcia) was a co-employee, and together they decided to steal a steer from their employer. On August 21st and while using his grandmother's

trailer, Jesko, along with Garcia, removed a steer from a pen. The steer taken had markings on its ear identifying it as belonging to Barrett. Furthermore, the animal initially was hauled to the FFA barn in Hereford, Texas, but later taken to the in-laws of Garcia for butchering. Appellant was present at the latter site when the steer arrived. According to Jesko, however, he did not inform appellant that it had been stolen. Thereafter, the ear tag was removed. Jesko, later, believed that his steer had been butchered and returned for his share of the meat. The meat he received, however, was from another steer, not the one he had taken.

On September 5, 1999, (some two weeks after the theft) Jesko informed Rodney Barrett (Rodney) (owner of the feedyard) of the theft. Rodney then contacted a local deputy sheriff about the matter. At that time, Rodney knew that the animal was located at a house whereat appellant resided with his parents. Both the deputy and Rodney went to the house. When they arrived at the home, they asked appellant's father if they could search his premises for the stolen steer; he agreed. The steer was then located and returned to Barrett.

The deputy eventually took statements from both Jesko and Garcia. So too was one taken from appellant. The latter was read into the record as follows:

> Jerry Garcia asked me one day if he ever had a crippled steer from the feed yard, could he bring it to my dad's house and have it butchered. I told him that it was okay. Then one night Jerry called me on the phone and said that he had a steer that he got from the feed yard and could he bring [sic] to my dad's house. I told him to bring it the next day. Jerry and Jason Jesko came to the house the next day with the steer. When I saw the steer was not crippled, and I looked at Jerry and he told me that they had stole it from a feed yard. I told Jerry that was his deal and that I did not want anything to do with it. Then my dad came over and I told him what was going on. He got mad and said, 'Do whatever you need to do.' I told Jerry and Jason to put it

2

in the pen. A couple of days later they came back and butchered one of dad's steers, and dad just kept the one they brought from the feed yard.

Garcia testified that he told Jesko that his brother-in-law (appellant) would butcher the steer, that they initially informed appellant that the steer was "broke" but appellant later discovered that it wasn't "broken," that nothing was said by appellant, and that the steer was placed in a pen.

Via a statement previously given to the deputy and admitted into evidence, Garcia testified that he told appellant that the steer was stolen before transporting it to appellant's residence and appellant directed him to bring it anyway. Garcia recanted this statement at trial, however. Instead, he testified that he simply informed appellant that the steer was "broke," not stolen.

Rodney testified that Jesko came to him and admitted the theft. He then went to the location whereat he knew the animal to be and found it. At that time it was removed from the pen and returned to him.

### Standard of Review

A legal sufficiency challenge calls for appellate review of the relevant evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App.2000). Furthermore, we are to consider all the evidence that sustains the conviction, whether properly or improperly admitted or whether introduced by the prosecution or the defense. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). This includes the evidence introduced in both the

3

guilt/ innocence and punishment stages of the trial. *De Garmo v. State*, 691 S.W.2d 657, 661 (Tex. Crim. App. 1985).

## *Analysis*

Appellant urges that the evidence is legally insufficient to support the theft conviction because the State failed to prove that he intended to deprive the owner of the steer. TEX. PEN.CODE ANN. §31.03(a) (Vernon 2003) (a person commits theft if he unlawfully appropriates property with intent to deprive the owner of it). Furthermore, deprivation occurs when the property is withheld from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner, or when property is restored only upon payment of a reward or compensation, or when property is disposed of in a manner that makes recovery of the property to the owner unlikely. *Id.* §31.01(2). So, all that need be proved is that the accused intended to do one of the foregoing acts. Additionally, in assessing whether the accused had that intent, the factfinder may consider both the accused's words and acts. *Banks v. State,* 471 S.W.2d 811, 812 (Tex. Crim. App. 1971).

In reviewing the evidence in a light most favorable to the verdict and disregarding that which contradicts it, we find the following: 1) appellant had agreed to butcher the steer, 2) appellant was told that the animal was stolen before it was taken to his residence and he directed the others to bring it anyway, 3) appellant admitted to knowing the steer was stolen once it was brought to his property, 4) appellant's father became angry when learning that the steer was stolen and told appellant to do whatever he chose with it, 5) appellant chose to direct the others to place the steer in a pen located on the property rather than remove it from the premises or return it to the owner, 6) a smaller animal was

4

butchered and parts of it were offered to Jesko as his share of the theft, 7) the stolen animal was kept at the home wherein appellant resided for approximately two weeks without appellant informing its owner of its location and while appellant knew it was stolen, and 8) Rodney found the steer at appellant's residence after being told by Jesko of the theft. From this, a rational jury could conclude, beyond reasonable doubt, that appellant intended to deprive Rodney of the steer and would have done so except for the owner discovering its location and reacquiring the animal. Thus, the evidence of guilt is legally sufficient to support the verdict.

Accordingly, we overrule the issue and affirm the judgment of the trial court.

Per Curiam

Do not publish.