**Opinion filed February 23, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00112-CR
_____

## ROBERTO ALCALA, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 17192B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Roberto Alcala, appellant, of the offense of capital murder, and the trial court assessed his punishment at confinement for life without parole.[1]  We affirm.

Appellant presents two points of error challenging the legal and factual sufficiency of the evidence to support his conviction for capital murder.  We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or a factual sufficiency claim, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Brooks v.*

---

[1]*See* TEX. PENAL CODE ANN. § 12.31 (West 2011).

*State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Appellant was charged with and convicted of capital murder for intentionally causing the death of Jessie Jeffrey Villarreal by shooting him in the head with a deadly weapon while in the course of robbing him. Appellant argues that the evidence is insufficient to prove that the murder occurred during the course of a robbery. Appellant's contention is that he is guilty of murder, not capital murder, because the "theft [was] an afterthought."

The record shows that appellant attended a quinceañera on the evening of November 29, 2008, and got "drunk." After the quinceañera was over, appellant asked his aunt for a ride home because the person he came with had already left. Appellant's aunt had no room in her vehicle for appellant, so she arranged for appellant to ride with Villarreal because she did not want appellant to have to walk home. Appellant's aunt testified that they left at approximately 1:00 a.m.

At 1:14 a.m., police were dispatched to a shooting at a 7-Eleven convenience store. When they arrived, they found Villarreal lying on the ground in a large pool of blood outside the front door of the store. Villarreal had been shot twice and died from a gunshot wound that entered his right cheek and exited through the left side of his neck. There was also a trail of blood from the parking lot to the front door. The front of the store had been shot three or four times, and there was blood smeared on the front door. At the time of the shooting, the store was closed, but a clerk was still in the store stocking the cooler. The clerk saw a small, red car pull up and then heard a popping noise and a loud noise against the front door. When the clerk got to the front door, he saw a young man up against the door, bleeding. He called 9-1-1, unlocked the door, and attempted to help the young man.

2

A copy of the tape from the store's security camera was admitted into evidence. It shows a car pulling up, the driver (Villarreal) getting out and walking to the front door of the store, the passenger (appellant) following Villarreal out through the driver's car door up to the front door of the store, the passenger grabbing something from the driver, the passenger returning to the driver's seat of the car, the passenger firing shots toward the driver and the store, and the passenger driving away in the car.

Villarreal's car was located by police later that morning. It had been damaged and abandoned in the middle of a street. The right front tire was shredded. There was blood on the driver's seat of the car and on the driver's floor mat. Five shell casings were found in the car, and one was found outside the car.

Ian Gray, who lived near where the car had been abandoned, testified that his wife woke him up at 1:30 a.m. on November 30, 2008, screaming that somebody was on their front porch. Gray went out to investigate and observed an intoxicated man that "seemed to be out of it." Gray identified the man in court as appellant. Gray offered his assistance to get appellant back on his way. Appellant told Gray that he needed some gas. Gray took appellant to a convenience store to get gas and brought him back. The car still would not start, so Gray gave appellant a ride to appellant's brother's house. Appellant's brother testified that appellant showed up at his house at about 2:00 or 3:00 in the morning, that appellant was drunk, and that appellant said he "f----d up."

Appellant was arrested later that day at his girlfriend's residence. At that time, police retrieved the jeans and the jacket that appellant had been wearing and the firearm that had been used to shoot Villarreal. Testing showed that Villarreal's blood was on appellant's jeans and jacket.

After his arrest, appellant waived his rights and spoke to police about the offense. The interview was recorded, and a copy of the recording was admitted into evidence. Appellant testified at trial and admitted shooting Villarreal. Appellant testified similarly to other witnesses about the quinceañera, about not being able to get a ride home from his aunt, and about getting a ride home from Villarreal. Appellant explained that he passed out in Villarreal's car and that, when he woke up, his zipper was pulled down, his private was pulled out, and Villarreal was "sucking [appellant's] d--k." Appellant shoved Villarreal away and began cussing him out. Villarreal put the car in motion. Appellant was angry and "lost it." Appellant first told Villarreal

3

to pull over so appellant could get out; then appellant told Villarreal to pull over and get out. Villarreal must have looked up and seen appellant's pistol. Villarreal pulled into a 7-Eleven. Appellant shot Villarreal as he was getting out of the car. Appellant chased Villarreal up to the store and shot him again. Appellant returned to the car and left in Villarreal's car. Appellant testified that he did not intend to steal the car but was just trying to get home. Appellant admitted, however, that he "[p]robably was" pointing the gun at Villarreal when he told Villarreal to get out of the car.

Tests performed in conjunction with the autopsy showed that Villarreal was intoxicated at the time of his death. Villarreal's sister confirmed at trial that Villarreal "was a homosexual."

To prove appellant committed capital murder as charged in this case, the State was required to show that appellant intentionally caused Villarreal's death while in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2011); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). For murder to qualify as capital murder under Section 19.03(a)(2), the killer's intent to rob must be formed before or at the time of the murder. *Conner*, 67 S.W.3d at 197. Proof of robbery committed as an afterthought and unrelated to a murder is not sufficient evidence of capital murder. *Id.*; *Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992). If there is evidence from which the jury could rationally conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the State has proven that the murder occurred in the course of the robbery. *Conner*, 67 S.W.3d at 197. The jury may infer the requisite intent from the defendant's conduct. *Id.*

While appellant may not have had the intent to rob Villarreal when he got in Villarreal's car, we hold that a rational jury could have found that appellant formed the requisite intent to take Villarreal's car before or during the commission of the murder and that taking the car was not an afterthought. There was evidence that appellant pointed his gun at Villarreal and ordered Villarreal to get out of the car. From this conduct and the subsequent actual taking of the car, the jury could have determined that appellant had formed the requisite intent to rob Villarreal when he ordered Villarreal out of the car at gunpoint. Appellant subsequently shot Villarreal, followed him to the store, shot him again, returned to the car, fired more shots, and left in Villarreal's car.

The evidence is sufficient to support appellant's conviction for capital murder. We overrule appellant's points of error.

The judgment of the trial court is affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


February 23, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.