

WITHDRAWN 2/21/2013
REISSUED 2/21/2013

IN THE
TENTH COURT OF APPEALS

No. 10-11-00247-CR

TRAVIS VERSHUN BRAZIL,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 52nd District Court
Coryell County, Texas
Trial Court No. FCM-10-20250

MEMORANDUM OPINION

Travis Vershun Brazil was found guilty of the capital murder of Frank Schreiber and received an automatic life sentence. In his sole issue, Brazil contends that the evidence is insufficient to prove that he was the person who committed the acts described by various witnesses because no one made an in-court identification of him as that person.[1]

---

[1] The State did not file a brief. *See Lewis v. State*, No. 10-09-00308-CR, 2012 WL 28707 (Tex. App.—Waco Jan. 4, 2012, pet. ref'd) (mem op., not designated for publication).

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 2712 (2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.

. . .

[C]ourts of appeals should adhere to the *Jackson* standard and determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.

*Hooper*, 214 S.W.3d at 15-17.

Leila Schreiber testified that she and her husband Frank, a member of the U.S. Army and stationed at Fort Hood, lived in Copperas Cove. On the evening of January 14, 2010, after visiting a friend, the Schreibers returned home around 9:00 p.m. and got ready for bed. Before they fell asleep, the doorbell rang several times, and Frank finally got up to answer the door because the person at the door was not going away. Frank called out to Leila that it was "Walker." Leila overheard Frank and Walker talking about a gun that Walker wanted to buy from Frank, but Frank had already sold it. Leila then overheard Walker ask to use the bathroom, and Leila, who was still in bed with the bedroom door open, saw Walker in the hall going into the bathroom.

The next thing Leila recalled was hearing two gunshots. She grabbed the phone and went to the hallway, where she saw Frank on the hall floor. Frightened, she immediately turned to go back into the bedroom and was shot in the hand and in the shoulder. She made it into the bedroom, closed the door, and called 9-1-1. A recording of Leila's 9-1-1 called was played for the jury. The 9-1-1 operator asked Leila who had

shot her and her husband, and she said it was Walker from the Army 62nd Engineers. Anthony Kostner, a Copperas Cove police officer, was the first person to reach Leila, and he testified that Leila told him that Walker, who was in the army with Frank and was Frank's friend, had shot her and Frank. Police Corporal Lubec Beshanksy interviewed Leila at the hospital, and she again reported that Walker had shot her and Frank.

With the assistance of Fort Hood command, investigators quickly narrowed the search to two suspects named Walker, one of whom was Brandon Walker. Detective Lori Hix detained Walker at Fort Hood for questioning, and lead investigator Detective Robert Terry soon went to Fort Hood to assist her. Walker eventually admitted that he had been to the Schreibers' house that evening, that something bad had happened, and that Travis Brazil had been with him. Walker was taken to the Copperas Cove Police Department for questioning. Texas Ranger Marcus Hilton assisted in the questioning of Walker. Walker implicated Travis Brazil, who was also brought in for questioning.

Detective Hix also interviewed Leila at the hospital, and she told Detective Hix that she heard Walker talking to her husband and then heard gunshots. She told Detective Hix that she went to the hallway, saw Frank on the floor bleeding and Walker on the other side of Frank, and Walker then shot her. On further examination, Leila explained that she did not see Walker shoot her; instead, she assumed it was Walker because she knew Walker was in the house.

Detective Michael Oakes also participated in the investigation, and he was present when Travis Brazil and Mackenzie Franklin arrived at the police department for

questioning the morning after the murder. Detective Oakes identified Brazil in court as the Travis Brazil who was brought in for questioning. Before Brazil was interviewed, Detective Oakes sat with him briefly, and they had a casual conversation.

Detective Terry and Ranger Hilton did the videotaped interview of Brazil. The videotaped interview, which lasted a couple of hours, was admitted into evidence and played for the jury. In it, Brazil is plainly visible and states that his name is Travis Vershun Brazil and that he is with the Army's 62nd Engineers Battalion. Brazil eventually admitted to borrowing Franklin's shotgun and going to the Schreibers' home with Walker to rob Frank but said that it was Walker who shot the Schreibers. After the interview, Detective Terry arrested Brazil for the capital murder of Frank Schreiber.

Police Corporal Cory Schmidt participated in the investigation, including sitting in on the videotaped interview of Brazil, and Brazil identified himself as Travis Vershun Brazil in the interview. After investigators learned that Walker had used an ATM at a Wal-Mart before going to the Schreibers' home that evening, Corporal Schmidt obtained security video from Wal-Mart, and he testified that Walker and Brazil were on the video, which was admitted into evidence. Photographs of Walker using the ATM were also admitted.

Master Sergeant William A. Lee of the U.S. Army identified Travis Vershun Brazil in court and testified that he knew Brazil and Walker; they had been two of his soldiers when he was First Sergeant of the 62nd. Army Specialist Tyson McCool testified that he knew Walker and Brazil because he was in the same company as them. McCool stated that Brazil was in the courtroom.

Mackenzie Franklin testified that he was in the army with Travis Brazil and knew him. On the evening of January 14, 2010, Brazil borrowed Franklin's shotgun, which was loaded; it held five or six shells. When Brazil returned it a few hours later, he asked Franklin if Franklin's fingerprints were on the shells. Franklin checked the shotgun, and it was empty, so he reloaded it and went to bed. Around 1:00 a.m., Brazil returned to Franklin's house and told him that Fort Hood's Criminal Investigations Division was looking for them on post, so Franklin went with Brazil and Brazil's girlfriend, Jasmine Lacey, to the staff duty desk. He and Brazil were then taken to the Copperas Cove Police Department. An investigator and Franklin went to Franklin's home, and he got the shotgun and handed it over.

Walker testified that he had pled guilty to the murder of Frank Schreiber and received a life sentence; part of the plea bargain was his providing truthful testimony at Brazil's trial. Walker said that he met Brazil about two weeks before the murder; they were in the army together and had both been placed on funeral detail. Walker had known Frank for a couple of years and, until about a few weeks before the murder, they had been good friends, but that ended because the Schreibers disagreed with Walker's relationship with a married woman.

Walker had spent time in the Schreiber home, helping them fix up their house. He knew that Frank had several guns and a 42-inch flat screen television. On the day of the murder, he saw Brazil in the parking lot and asked him if he wanted to make some money because Walker was low on money. Brazil asked if Walker knew anyone who had guns, and he replied that Frank Schreiber did. Later that evening, he texted Brazil

to see if he wanted to get the guns and the TV, and Brazil said yes. They met in the parking lot and drove to Copperas Cove. The plan was for Walker to go to the Schreibers' house and buy a handgun from Frank, and while Walker was in the bathroom, Brazil was supposed to come in and rob Frank of his other guns and the TV.

Walker and Brazil first drove by the Schreibers' house and then went to an ATM at Wal-Mart where Walker got $300 cash. They then drove to Franklin's home, and Brazil went in and came out with a shotgun. They returned to the Schreibers' house, and Walker went to the door and rang the bell. Walker asked to buy a handgun, but Frank said he had already sold it. Walker then asked if he could use the bathroom, and Frank let him in. While in the bathroom, Walker called Brazil and whispered for him to come in and get the guns and TV. After using the bathroom and while continuing to talk to Frank about the gun, Walker began to leave and saw Brazil at the front door with the shotgun. Walker backed away, and Brazil jumped forward and shot Frank, who fell to the floor. Brazil then shot him again in the stomach area. Leila came out screaming, and Brazil shot at her. Walker and Brazil then ran out of the house, got in the car, and returned the shotgun to Franklin.

The gist of Brazil's sufficiency issue is that no witness identified Appellant Travis Vershun Brazil as the "Travis Brazil" who committed the acts that the various witnesses testified about. For example, Brazil notes that Walker did not identify Brazil in court; neither did Franklin. Brazil asserts that only Master Sergeant Lee made an in-court identification, but Lee did not otherwise link Brazil to the acts pertaining to the capital murder of Frank Schreiber.

> Identity may be proven by direct evidence, circumstantial evidence, or even inferences. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (noting that victim's misidentification of juror as perpetrator at trial was not fatal where circumstantial evidence, including testimony of officer who arrested defendant at scene, pointed to the defendant as the perpetrator). Proof of the accused's identity through circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence, as both are equally probative. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). The sufficiency of the evidence is then determined from the cumulative effect of all the evidence. *See Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987).

*Jones v. State,* No. 10-08-00261-CR, 2009 WL 3858016, at *1 (Tex. App.—Waco Nov. 18, 2009, pet. ref'd).

Numerous witnesses from Fort Hood testified that Brandon Walker and Travis Brazil were in the army there and that they were both from the 62nd FSC company. Master Sergeant Lee identified the defendant Travis Vershun Brazil as one of his soldiers. Specialist McCool testified that he knew Walker and Brazil because they were all in the same company and that Brazil was in the courtroom.

Detective Oakes was present when Brazil and Franklin arrived at the police department for questioning the morning after the murder, and he identified Brazil in court as the Travis Brazil who was brought in for questioning. In his videotaped interview, Brazil identified himself as Travis Vershun Brazil and admitted to going to the Schreibers' home with Walker to rob them. Brazil's face is plainly visible in the video. Furthermore, Corporal Schmidt testified that Brazil was on the Wal-Mart security video with Walker.

There was direct evidence of Appellant Travis Vershun Brazil's identity from Brazil himself in the videotaped interview in which, in addition to identifying himself,

he admitted to going to the Schreibers' home with Walker to rob them. There was ample circumstantial evidence that the Travis Brazil who was in the army with Walker and who Walker said shot Frank Schreiber was Appellant Travis Vershun Brazil. And from the videotaped interview of Brazil and the Wal-Mart security video of Brazil and Walker, the jury could have reasonably inferred that the person on those videos was Appellant Travis Vershun Brazil, the defendant on trial for the capital murder of Frank Schreiber.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational jury could have found beyond a reasonable doubt that Appellant Travis Vershun Brazil was the person who committed the capital murder of Frank Schreiber. Because the evidence is sufficient, we overrule Brazil's sole issue and affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed December 27, 2012
Do not publish
[CRPM]