

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00338-CR

**MICHELLE ISAACS,**

                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                        **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2011-663-C1

## MEMORANDUM OPINION

After a trial to the court, Michelle Isaacs was convicted of credit card abuse and sentenced to two years in a state jail facility.  *See* TEX. PENAL CODE ANN. § 32.31 (West 2011).  Her sentence was suspended, and Isaacs was placed on community supervision for five years.  Because the evidence was sufficient to support the conviction, the trial court's judgment is affirmed.

As charged in this case, the State was required to prove beyond a reasonable doubt that Isaacs, with intent to fraudulently obtain a benefit, presented or used Gary Althaus's credit card with the knowledge that the card was not issued to Isaacs and was used without Althaus's effective consent. *Id*. (b)(1). In one issue, Isaacs complains the evidence was insufficient to support her conviction. Specifically, she contends the evidence was insufficient to show that she was the person who made the charge on the credit card to DirecTV.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting

inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Gary Althaus and Isaacs were co-workers and friends. On June 24, 2010, Althaus received a text from Isaacs informing Althaus that Isaacs had a "Credit card issue over 19.00" and needed Althaus's credit card number. Isaacs assured Althaus she would give him the cash to cover the transaction. Althaus agreed to give her the number but not through a text, asking if she could wait until he arrived at the office in about 15 minutes. Isaacs told him to hurry so she did not "lose my screen." She then twice asked by text why Althaus would not simply call her. Althaus testified at trial that he gave Isaacs his credit card when he arrived at work. He said Isaacs told him she needed the number to order an Xbox connector for her son which had been lost in a recent move. He further testified that Isaacs returned the card when he was not at his desk and did not give him any cash. When he received his credit card bill, Althaus noticed

charges to DirecTV and Grandecom. The services for each company were provided to Isaacs's address. The name of the person to whom services were provided by DirecTV was Isaacs's 13 year old son. Neither of these charges were for $19.00; and neither of the charges were authorized by Althaus.

When initially contacted by Detective John Clark of the Waco Police Department, Isaacs denied having access to Althaus's credit card. She told Clark that Althaus had yelled out his number to her from his office, that she did not write down the number, and that she paid Althaus the cash for using the card. She said she told Althaus the credit card was needed to turn on Grandecom, a cable provider, at her new house. She also told Clark that she probably had a text that informed Althaus she needed the credit card for a cable bill. She denied knowing anything about a charge to DirecTV.

Isaacs was told by Clark to bring her phone to the station the next day so that the text could be photographed. She never came in.

A week later, Isaacs called and left a message with Clark explaining that she now recalled first calling DirecTV to set up her cable but, because it was too expensive, she told them not to connect it. She did not understand why the card was charged anyway and had DirecTV credit Althaus's card for the charge. She also explained that she did not have the texts mentioned in the first call.

Over a month after the first call, and after failed attempts to contact Isaacs, Clark located a new number for Isaacs, and contacted her. Isaacs again said she did not have

Althaus's credit card number. She told Clark that she did not come to the station the day after the first telephone call because she did not have the text to Althaus that she thought she had. She also stated that she did not think to let Clark know when she changed her phone number. When confronted with the authorization to only charge $19.00, Isaacs explained that amount was for the connection fee only and that she told Althaus she needed the card for the first month's bill as well.

Later, in an email to her attorney, Isaacs modified her story. She stated she needed to turn on her "Grande cable service but needed a credit card to do it over the phone/internet." Contrary to what she told Clark earlier, she now said that she called Althaus on his cell phone, Althaus gave her his American Express card number over the phone, and she wrote it down. She also said she gave Althaus the cash when he arrived at the office that day. She further stated in the email to her attorney that she asked her "now ex who is in jail now" about the "AT&T" charge, and he admitted to finding the paper with the credit card information on it and making the charge. She did not provide a name of this "ex."

At trial, Isaacs modified her story again. She said it was possible that her 13 year old son had set up the charge on DirecTV. She also stated that a former boyfriend, David Harris, admitted to making the charge on DirecTV. She admitted to writing down the credit card number when she had told Clark that she had not written it down.

She also admitted to initially telling Clark that she had been the one to call DirecTV but cancelled the service because of the price.

The trial court, as the factfinder, was entitled to judge the credibility of the witnesses and, because of the modifications to her story, could have chosen to believe none of Isaac's testimony. Thus, based on the evidence, circumstantial and direct, the trial court could have found the essential elements of the offense of credit card abuse beyond a reasonable doubt. Isaac's sole issue is overruled.

Having overruled the sole issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 22, 2015
Do not publish
[CR25]

