In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-051 CR


____________________



CURTIS ROBINSON, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 253rd District Court


Liberty County, Texas


Trial Cause No. 25,461






MEMORANDUM OPINION


 A single indictment charged appellant, Curtis Robinson, Jr., with separate felony
offenses of Aggravated Robbery and Burglary of a Habitation. The lone victim, E.B.Y., was
eighty-four years' old at the time of the offenses. Other than identity of the perpetrator, the
basic facts are not in dispute. On September 11, 2004, E.B.Y. was alone in his home when
a black male in his thirties or early forties knocked at the door. The man claimed his vehicle
had overheated and he needed water. When E.B.Y. opened his storm door, the man pulled
out a knife and held it under E.B.Y.'s throat. The man used an electrical cord to tie up
E.B.Y., and then stole a handgun and money belonging to E.B.Y. The man then left the
house. At trial, E.B.Y. was unable to positively identify Robinson as the man who robbed
and burglarized him. The jury found Robinson guilty on both counts. Finding Robinson to
be an habitual offender, the trial court assessed punishment at life on each offense and
ordered, the sentences to run consecutively with ones Robinson was serving at the time of
trial. Robinson raises two appellate issues: 

 1. The trial court erred in holding the evidence to be sufficient to sustain the
conviction, because the evidence was insufficient to establish the identity of
the Appellant as the actor perpetrating the alleged offense. 


 2. The trial court erred in permitting the identification of the Defendant based
on a "human scent" lineup conducted without a Court Order.


 At the close of the State's case, Robinson moved for an instructed verdict of "not
guilty" on each count of the indictment. These motions were denied by the trial court. A
challenge to the denial of a motion for instructed verdict is actually a challenge to the legal
sufficiency of the evidence. Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993);
Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). We review a challenge to
the legal sufficiency of the evidence by viewing the evidence in the light most favorable to
the verdict in order to determine whether any rational trier of fact could have found the
essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Moff v. State, 131 S.W.3d 485, 488
(Tex. Crim. App. 2004). When conducting a sufficiency review, we consider all of the
evidence admitted, whether properly or improperly admitted. Conner v. State, 67 S.W.3d
192, 197 (Tex. Crim. App. 2001). This standard leaves to the factfinder the responsibility
to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic to ultimate facts. See Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim.
App. 2000). The factfinder is the sole judge of the credibility of the witnesses and the weight
to be given their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). Thus,
the factfinder is free to accept or reject any or all of a witness's testimony. See Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 

 Under his first issue, Robinson argues the evidence was legally insufficient to identify
him because the circumstantial evidence tying him to E.B.Y.'s stolen handgun was too
tenuous. The record indicates that no fingerprint evidence was recovered at the scene or
found on any item connected with the crime. Robinson, however, appears to discount the 
human scent identification evidence that essentially establishes his complicity in the offences
as described by E.B.Y. As noted above, in a sufficiency analysis, the reviewing court
examines all the evidence whether properly or improperly admitted. Conner, 67 S.W.3d at
197. At trial, Deputy Keith Pikett of the Fort Bend County Sheriff's Office testified his three
trained bloodhound trailing dogs positively alerted on Robinson's scent during human scent
discrimination "lineups." The lineups involved the electrical cord used by the perpetrator to
tie up E.B.Y. and the wallet from which the perpetrator extracted cash belonging to E.B.Y. Additionally, Robinson's friend, and former employer, Gary Reynolds, testified that
Robinson unexpectedly appeared at his home in Austin, Texas, on September 12, 2004.
Reynolds stated that Robinson appeared "grungy," was depressed and paranoid, and that
Robinson spoke of committing suicide. During this conversation with Reynolds, Robinson
said he had done something "that couldn't be fixed," and that he had committed a crime. 
Robinson further said that he had "tied up an old man" and had robbed him. Robinson
thought he had killed the old man. Robinson produced a handgun and told Reynolds that he
would use the handgun to commit suicide. Robinson told Reynolds the gun belonged to "the
old man." 

 In addition to the above, the record also contains the evidence tracing E.B.Y.'s stolen
handgun to Robinson, the direct proof of Robinson's presence near E.B.Y.'s home on the day
of the offenses, and E.B.Y.'s general description of the intruder matching that of Robinson. 
From all of the record evidence, taken in the light most favorable to the verdict, any rational
trier of fact could have found Robinson to have committed the charged offenses beyond a
reasonable doubt. Issue one is overruled. 

 Issue two involves the admissibility of the human scent identity testimony. Prior to
trial, Robinson filed a number of motions, one of which requested suppression of evidence
identifying Robinson based on "human scent" lineups. Robinson grounded his motion on
Texas Rule of Evidence 702. As further authority, Robinson's motion cited Kelly v. State, (1)
Nenno v. State, (2) and Winston v. State. (3) The motion concluded with the following prayer: 

 WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the
Trial Court GRANT a hearing on this Motion to determine which standard
should apply; whether testimony regarding "human scent" identification by
canines should be allowed; and, whether the "human scent" identification of
the Defendant be suppressed.


Although the written motion does allude to the fact that the "human scent" lineup was
conducted without a court order, the substance of the motion does not complain of any of
these out-of-court identification procedures on the basis that prior judicial approval was not
obtained. Nor was this theory raised or argued to the trial court. Therefore, any portion of
Robinson's second appellate issue complaining of the lack of a court order prior to any of the
human scent lineups suffers from procedural default, and Robinson has forfeited appellate
review for error, as the issue does not comport with what was raised and argued to the trial
court. See Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). 

 The remainder of issue two is governed by the analyses and holdings in Winston v.
State, 78 S.W.3d 522 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd), as the operative
facts and circumstances there are almost identical to those presented in the record before us. 
Winston challenged, by way of a suppression motion, the testimony of a deputy sheriff
regarding a "dog sniff test," based upon Texas Rules of Evidence 702. Id. at 524-25. The
Winston opinion describes a procedure conducted by the deputy that is very similar to the
human scent lineup used in the instant case. Id. at 524. In the Winston investigation, the
deputy used two dogs to sniff five gauze pads, one of which contained the scent of Winston. 
Id. Over Winston's objections, the deputy testified that both bloodhounds "alerted" to the
gauze pad containing Winston's scent. Id. He also testified that he interpreted the "alerts"
as indicating a match between the scent obtained from the crime scene [residential burglary]
and Winston's scent. Id. In framing our issue, we can do no better than the Fourteenth Court
did in framing the issue before it, viz: "We must decide whether the court properly admitted
expert testimony that described the purported identification by a trained police bloodhound
of an individual based on his scent." Id. at 525. 

 First, we note Robinson affirmatively announced "no objection" when any of the scent
identification evidence was proffered by the State during his trial. When a pretrial motion
to suppress evidence is overruled, the defendant need not subsequently object at trial to the
same evidence to preserve error on appeal. Moraguez v. State, 701 S.W.2d 902, 904 (Tex.
Crim. App. 1986). However, when a defendant affirmatively states during trial that he has
"no objection" to the admission of the evidence in question, he has forfeited appellate review
as to any error in its admission, despite the pretrial ruling. See Moody v. State, 827 S.W.2d
875, 889 (Tex. Crim. App. 1992); Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988);
see also Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) ("Forfeit" and
"procedural default" refer to the loss of a claim or right for failure to insist upon it by
objection.). Robinson did not preserve an objection to the admissibility of the evidence.

 Furthermore, we see no error in the admission of the evidence in any event. The
Winston Court set out the proper standard of review thusly:

 We review a trial court's ruling on the admissibility of evidence under
an abuse of discretion standard. Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000); see also Kelly v. State, 824 S.W.2d 568, 574 (Tex.
Crim. App. 1992). In determining the admissibility of evidence, the trial court
is the sole judge of the weight and credibility of the evidence presented at the
suppression hearing. Weatherred, 15 S.W.3d at 542. We will reverse only if
the trial court's decision falls outside "the zone of reasonable disagreement." 
Id. 


Winston, 78 S.W.3d at 525. The Winston Court then analyzed the admissibility of the
deputy's testimony in light of Rule 702 based on the relevance and reliability test announced
in Nenno. (4) Id. at 526. At the suppression hearing in the instant case, Robinson took the
position that the Nenno test was the more appropriate test to apply under the circumstances,
with the State agreeing to this approach. After applying the Nenno test to the facts presented
to it, the Winston Court ruled "that the foundational requirements established in this case
comply with the Nenno test and that the trial court did not abuse its discretion in admitting
the scent-lineup testimony from [the] [d]eputy [sheriff]." Id. at 529. 

 The threshold determination in any inquiry into the admissibility of expert testimony
under Rule 702 is whether the testimony is helpful to the trier of fact. Emerson v. State, 880
S.W.2d 759, 763 (Tex. Crim. App. 1994). Texas Rule of Evidence 702 provides that if
scientific, technical, or other specialized knowledge will assist the trier of fact to understand
the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an opinion or
otherwise. Tex. R. Evid. 702. It is the trial court's responsibility to determine whether
proffered scientific evidence is sufficiently reliable and relevant to assist the jury. See
Jackson v. State, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). The requirement of reliability
applies with less rigor to nonscientific expert testimony than to the hard sciences. See Nenno,
970 S.W.2d at 561; see also Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). 
When nonscientific expert testimony is at issue, the trial court should inquire: (1) whether
the field of expertise is a legitimate one; (2) whether the subject matter of the expert's
testimony is within the scope of that field; and (3) whether the expert's testimony properly
relies on or utilizes the principles involved in the field. Nenno, 970 S.W.2d at 561.

 The Winston Court found that the use of scent lineups is a legitimate field of expertise,
noting that thirty-seven states and the District of Columbia admit scent-tracking evidence to
prove the identity of an accused, so long as a proper predicate has been established. Winston,
78 S.W.3d at 527. Additionally, the Winston Court referred to an FBI letter to Deputy Pikett
commending his "work with the bloodhounds and scent lineups" and noting that such work
by Pikett "'saved many investigation man hours that would have been spent searching for the
wrong person.'" Id. at 526-27. We echo the following sentiment of the Winston Court:
"Clearly, these dogs' ability to distinguish scents is valued and respected outside the context
of the courtroom." Id. Our research has turned up nothing since Winston calling scent-tracking evidence or scent identification lineups into question. (5) We find that human scent
identification evidence involving the use of trained dogs to be a legitimate field of expertise. 
 As the record clearly reflects that the subject matter of Deputy Pikett's testimony was
squarely within the scope of human scent identification lineups, we move on to the third
Nenno, i.e. factor whether the testimony properly relies on or utilizes principles of the field. 
The Winston Court analyzed this factor by breaking it down into three sub-factors: (1) the
qualifications of the particular trainer; (2) the qualifications of the particular dog; and (3) the
objectivity of the particular lineup. Id. Deputy Pikett testified to his credentials at the
suppression hearing: (1) earned a bachelor's degree in Chemistry, and a master's degree in
Education, with an "AP assistance" in Chemistry; (2) spent eight years as a deputy with the
Fort Bend County Sheriff's Department and a certified peace officer; (3) had thirteen years'
total experience working with law enforcement with his dogs; (4) began training
bloodhounds in 1989, and has trained five of his own dogs, and has trained dogs for Houston,
Dallas, Bellaire, Galveston, Waller County, and Texas Parks and Wildlife law enforcement
agencies; (5) attended 176 seminar hours on bloodhound training; (6) conducted four
"schools" for the FBI, per their request, to instruct on the collection and use of scent
evidence; (7) has written articles for "The American Bloodhound Club" on the training of
bloodhounds; (8) in addition to the FBI, has assisted the U.S. Marshal's office, the Texas
Rangers, and the Bureau of Alcohol, Tobacco, and Firearms. Thus, we find Deputy Pikett's
qualifications were sufficiently established.

 Deputy Pikett then testified concerning the three dogs he used in the instant case,
"Quincy," "Jag," and "James Bond." He began training his dogs when they were eight weeks
old. His training procedures have been approved and recommended by other experts in the
field, namely Glen Remby, Jerry Yelk, and Bill Tolhurst. (6) He then described the dogs'
qualifications, starting with his eight-year old dog, Quincy, who had worked approximately
1750 felony cases by the end of the year 2005. As of the end of 2005, Quincy had also
worked 760 cases involving human scent identification lineups. Deputy Pikett's next dog,
Jag, had worked 335 human scent identification lineup cases by the end of 2005. Deputy
Pikett's youngest dog, James Bond, had worked 230 cases involving human scent
identification lineups. The three dogs are registered bloodhounds with the American Kennel
Club. Deputy Pikett indicated that out of 760 scent identification cases worked, Quincy
identified the wrong subject only twice, while neither Jag nor James Bond had ever
misidentified a subject. On the question of scent identification when the scents are stale or
old, Deputy Pikett testified that his dogs had experience with shell casings and smoked
cigarettes that were five years old "and the dog alerted on them and DNA proved them right." 
We find that the dogs were qualified for human scent identification.

 The record indicates that Deputy Pikett not only testified in detail as to the procedure
used in the scent identification lineup in the instant case, but the trial court was shown the
lineup procedure at issue conducted by Deputy Pikett and members of the Liberty County
Sheriff's Department the day before the hearing via DVD recording. The testimony indicates
the three dogs alerted to Robinson's scent on both the wallet and the electrical cord handled
by the perpetrator of the offenses at issue. From all of the testimony describing the scent
lineup procedure used to identify Robinson, we find the objectivity prong well established. 
Thus, the third Nenno factor is also established. See Winston, 78 S.W.3d at 527-29. We
further note that during the entire hearing, no objections were lodged to any testimony about
the facts or circumstances regarding the scent identification lineup. We conclude, as did the
Winston Court, that the foundational requirements established in the record comply with the
Nenno test and therefore the trial court did not abuse its discretion in admitting the evidence
concerning the human scent identification lineup. Robinson's second issue is overruled. 

 The judgment of the trial court is affirmed. 

 AFFIRMED. 

 

 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 17, 2006

Opinion Delivered November 29, 2006

Do not publish


Before Gaultney, Kreger and Horton, JJ.
1. 824 S.W.2d 568 (Tex. Crim. App. 1992).
2. 970 S.W.2d 549 (Tex. Crim. App. 1998).
3. 78 S.W.3d 522 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd).
4. 970 S.W.2d at 560-61.
5. One California case, which held the trial court erred in admitting evidence of the
defendant's identification via a canine scent identification lineup without first holding a
foundational hearing, involved the use of a "scent transfer unit," a device described by the
canine-handler as "essentially a modified dust buster." See People v. Mitchell, 2 Cal. Rptr. 3d
49, 54 (Cal. Ct. App. 2003). In the instant prosecution there was no mechanical device involved
in the scent identification lineup procedure. 
6. Robinson did not lodge an objection to this line of testimony. The record does not
further identify these named "experts," nor illuminate any further the nature of their approval of
Deputy Pikett's training techniques.