Affirmed and Memorandum Opinion filed July 19, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00182-CR



 

THOMAS ABRAHAM ARANA III, Appellant

V.

THE STATE OF TEXAS, Appellee

 



On Appeal from the 263rd District
Court 

Harris County, Texas

Trial Court Cause No. 1128718



 

MEMORANDUM OPINION

A jury
convicted appellant, Thomas Abraham Arana III, of capital murder, and he was
mandatorily sentenced to life imprisonment without parole.  See Tex.
Penal Code Ann. § 12.31(a)(2) (West 2011).  Appellant contends the evidence is
legally and factually insufficient to support his conviction.  We affirm.

I.   Background

In July
2007, Jonathan Mann arranged a marijuana transaction between appellant and Marcus
Scott.  Specifically, appellant was supposed to purchase ten pounds of
marijuana from Scott for $3,500.  Appellant drove his vehicle to a convenience
store where he met Mann.  Appellant then followed Mann to Scott’s house.  The southern
side of Scott’s house was flanked by a driveway that was partly covered by a
carport; a laundry room opened to the driveway.  Appellant parked his vehicle
and walked up the driveway toward the laundry room.  Appellant asked to see the
marijuana and informed Scott that he did not bring enough money for the transaction. 
Scott showed appellant the marijuana and produced a sample.  Appellant left in
his vehicle and returned approximately fifteen minutes later.

According
to Mann, he waited under the carport with Scott until appellant returned.  When
appellant arrived, Mann was looking at Scott’s backyard.  Mann testified that
he did not possess a weapon at the time of the shooting.  After appellant
walked up the driveway, Mann turned to acknowledge appellant, “and the next
thing I heard him do was call my name.”  Mann again turned to face appellant, and
appellant used a handgun to shoot Mann in the jaw.  After Scott stated, “Oh,
man, he’s shooting,” Mann witnessed appellant shoot Scott in the back as Scott
was attempting to flee.  Mann fled, leaving a trail of blood.  As Mann ran, one
of his teeth fell to the ground, and he dropped his cell phone.  Mann ultimately
recovered from his injuries.

Appellant’s
version of the shooting differed.  According to appellant, he arrived at Scott’s
house with $2,000 cash.  Appellant informed Scott that he did not bring enough
money for the purchase.   After Scott showed appellant the marijuana and
provided a sample, appellant drove to his apartment, retrieved enough money to
buy nine pounds of marijuana, and returned to Scott’s house with $3,100 in one-hundred
dollar bills.  Appellant gave Scott the $3,100, which he placed in his pocket. 
As appellant was preparing to leave, Mann yelled “something” to him.  Appellant
turned and saw Mann holding a revolver.  Mann told appellant to “give it up,”
apparently referring to the marijuana.  Appellant then drew his handgun, shot
Mann, and shot Scott in the back as he was turning away from appellant.  

After the
shootings, appellant retrieved a black bag containing the marijuana and ran to
his vehicle.  As appellant was running, other persons approached the scene, and
one person yelled “what’s up?”  Appellant testified that he fired a warning
shot into the air in order to keep the crowd back.  However, Demorris Harmon
testified that, after he asked appellant, “[W]hat’s up?  What’s going on?,” appellant
fired at him.       

Shortly
thereafter, police and medical personnel arrived at the scene and found Scott’s
body in the laundry room; he was pronounced dead at the scene.  A medical
examiner testified that Scott died from the gunshot wound to his back.  Over
four-thousand dollars in cash were found on Scott’s person, including $3,500 in
one-hundred dollar bills.  Investigators discovered several types of narcotics
in the laundry room.  They also found Mann’s tooth and cell phone and three
casings from .45 caliber ammunition.  Appellant testified that he shot Mann and
Scott with a .45 caliber handgun, which he sold after the incident.

Mann and
Harmon told investigators that appellant was the shooter and identified him on
a photospread.  When investigators questioned appellant, he denied involvement
in the shooting.  Appellant was ultimately convicted of capital murder for
intentionally killing Scott in the course of committing robbery.   

II.   Sufficiency of the Evidence

            In his first
and second issues, appellant contends the evidence is legally and factually
insufficient to support the jury’s verdict.  Specifically, appellant argues the
evidence does not support a finding that he caused Scott’s death while in the
course of committing or attempting to commit robbery.

A.        Relevant Law
and Standard of Review

A person commits capital murder if he
intentionally commits murder in the course of committing or attempting to
commit robbery.  Tex. Penal Code Ann. §§ 19.02(b), 19.03(a)(2) (West 2011).  A
person commits the offense of robbery if, in the course
of committing theft, and with the intent to obtain or maintain control of
property, he intentionally or knowingly causes bodily injury to another or threatens
or places another in fear of imminent bodily injury or death.  Id.
§ 29.02(a)(2) (West 2003).  For murder to constitute capital murder committed
in the course of a robbery, the intent to rob must be formulated before or at
the time of the murder.  Herrin v. State, 125 S.W.3d 436,
441 (Tex. Crim. App. 2002).  Proof that the robbery was committed as an
afterthought and unrelated to the murder is not sufficient.  Id.

While this appeal was pending, five
judges on the Texas Court of Criminal Appeals held that only one standard
should be employed to evaluate whether the evidence is sufficient to support a
criminal conviction beyond a reasonable doubt: legal sufficiency.  See Brooks v. State, 323 S.W.3d 893, 894–95 (Tex. Crim. App.
2010) (plurality op.); id. at 926 (Cochran, J., concurring).
 Accordingly, we review appellant’s challenge to factual sufficiency of
the evidence under the legal-sufficiency standard.  See Pomier v. State,
326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (applying a
single standard of review required by Brooks); see also Caddell v.
State, 123 S.W.3d 722, 726–27 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d) (explaining this court is bound to follow its own precedent).

When reviewing sufficiency of evidence,
we view all of the evidence in the light most favorable to the verdict to
determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Brooks, 323 S.W.3d at 899 (plurality op.).  We may
not sit as a thirteenth juror and substitute our judgment for that of the fact
finder by reevaluating the weight and credibility of the evidence.  Id.
at 899, 901; Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999); see also Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986) (expressing that jury may choose to believe or disbelieve any portion of
the testimony).  We defer to the fact finder’s resolution of conflicting
evidence unless the resolution is not rational.  See
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  The
sufficiency of the evidence is measured by the elements of the offense as
defined in the hypothetically correct jury charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997). 

Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor and can be
sufficient alone to establish guilt.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  An inference is a
conclusion reached by considering other facts and deducing a logical
consequence from them.  Id. at 16.  Speculation is
mere theorizing or guessing about the possible meaning of facts and evidence
presented.  Id.  A conclusion reached by speculation may not be
completely unreasonable, but it is not sufficiently based on facts or evidence
to support a finding beyond a reasonable doubt.  Id.  Each fact need not
point directly and independently to the guilt of the appellant, as long as the
cumulative effect of all the incriminating facts are sufficient to support the
conviction.  Id. at 13.  

B.        Analysis

Appellant’s
testimony that he intentionally shot Scott satisfies the elements of murder. 
Tex. Penal Code Ann. § 19.02(b)(1), (2).  Viewing all of the evidence in the
light most favorable to the verdict, the following facts support the jury’s
determination that appellant intended prior to or during the time of the murder
to rob Scott: 

·       
Appellant arrived at Scott’s house
without the agreed amount of money. 

·       
Appellant asked to see the
marijuana and for a sample. 

·       
Appellant stated that he needed to
retrieve the rest of his money and then left for fifteen minutes. 

·       
When appellant returned, Scott and
Mann were waiting under the carport; Mann did not possess any weapons. 

·       
Mann acknowledged appellant’s
return; appellant then called Mann’s name and shot Mann in the face when he
turned.

·       
Scott stated, “Oh, man, he’s
shooting”; appellant shot Scott in the back as he was attempting to flee. 

·       
Appellant retrieved the black bag of
marijuana and ran to his vehicle; as he ran, appellant shot at Harmon.

·       
Appellant sold the murder weapon
and later told police investigators that he was not involved in the shooting.      

These
facts support an inference that appellant intended to murder Mann and Scott
then flee with the marijuana, which correspondingly supports the jury’s
conclusion that appellant murdered Scott in the course of committing robbery. 
Tex. Penal Code Ann. § 19.03(a)(2); see also Herrin, 125 S.W.3d at
441; Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)
(“If there is evidence . . . from which the jury could rationally conclude
beyond a reasonable doubt that the defendant formed the intent to obtain or
maintain control of the victim’s property either before or during the
commission of the murder, then the State has proven that the murder occurred in
the course of the robbery.”).  The jury chose to believe Mann’s account of the
incident and disbelieve appellant’s testimony that Mann drew a revolver before
appellant drew his gun.  Further, there is circumstantial evidence negating
appellant’s testimony that Mann drew a revolver: although investigators located
three bullet casings and Mann’s tooth and cell phone near the murder scene, they
did not recover a revolver.

Appellant
argues the evidence demonstrates that he paid Scott $3,100 in one-hundred
dollar bills because $3,500 in one-hundred dollar bills was found on Scott’s
person.  Apparently, appellant contends this evidence proved he did not intend
to rob Scott because it is unreasonable to infer that appellant would have paid
for the drugs if he intended to take them.  This contention lacks merit because
the jury chose not to believe appellant’s claim that Mann drew a gun, and there
was no suggestion Scott possessed a gun.  If neither Mann nor Scott drew a gun
on appellant, a rational jury could have concluded that appellant would not pay
$3,100 for the marijuana, shoot the men, then flee with the marijuana without
recovering the $3,100.  It would be irrational to conclude appellant’s plan
involved tendering $3,100 cash in order to rob the victims of their marijuana
when he could have simply paid $3,100 and obtained the marijuana without using deadly
force.  Instead, the jury reasonably could have determined that appellant intended
to shoot Scott and Mann and take the marijuana without paying.  There was evidence
that such a plan is colloquially described as a “dope rip.”  In fact, appellant
acknowledged that a person could commit a “dope rip” by (1) ascertaining that
the victim possesses narcotics and sampling the narcotics to ensure “it’s good
dope,” (2) fabricating an excuse for having to leave to obtain the purchase
money, and (3) returning with a gun to use in robbing the victims of the narcotics. 
There was also evidence suggesting that the cash found on Scott was acquired
from previous drug transactions.  Several witnesses testified Scott was an
active drug dealer, and his body was discovered in a laundry room containing
other drugs and an old washing machine where marijuana was stashed.  

Appellant
also argues that the evidence is insufficient to prove his intent to commit
robbery because there was no testimony he demanded the marijuana before the shooting
and he did not take the other drugs in Scott’s laundry room.  However, these
facts did not negate appellant’s intent to commit robbery.  The jury could have
reasonably believed appellant did not demand the marijuana because his intent
was to kill both men then take the drugs, and he did not spend time searching
for other items to take because he wanted to flee the scene quickly.

Finally,
appellant argues the evidence is insufficient to support his conviction because
Mann and Harmon were not credible.  Appellant notes that Mann (1) was a
life-long friend to Scott who would have benefited financially from the drug transaction,
(2) had reason to blame appellant for the shooting because appellant testified
that Mann drew the first firearm, and (3) testified that he wanted to assist
police investigators.  However, these factors were for the jury to consider in
evaluating the credibility Mann and Harmon.  Because the jury implicitly found
them to be credible, we must defer to its findings.  See Brooks, 323
S.W.3d at 899 (plurality op.) (stating appellate courts must defer to jury’s
credibility and weight determinations).  Accordingly, we conclude the evidence
is sufficient to support the jury’s verdict.  Appellant’s first and second
issues are overruled.

We
affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Seymore,
and McCally.

 

Do Not Publish — Tex. R. App. P. 47.2(b).