

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00141-CR

BRIAN CHUKWUEMEKA EZEH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1517335D

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

Brian Chukwuemeka Ezeh was indicted in Tarrant County[1] for the offense of intentionally or knowingly causing bodily injury to D.E.,[2] a child under the age of fourteen.[3] The jury found Ezeh guilty of the lesser offense of recklessly causing bodily injury to a child. Ezeh was sentenced to two years' confinement in a state jail facility.

On appeal, Ezeh argues that the trial court erred in (1) admitting testimony from the State's expert witness that was conclusory, speculative, and thus, irrelevant, (2) allowing the State's expert to testify about her diagnosis of risks sustained by D.E., as she is a nurse and not qualified to testify to such matters, and (3) allowing the State's expert to offer testimony in which the probative value was substantially outweighed by its prejudicial effect. Ezeh also contends that there was legally insufficient evidence to support his conviction.

Because (1) legally sufficient evidence supports Ezeh's conviction and (2) the trial court did not err in allowing the State's expert to testify, we affirm the trial court's judgment.

## I.      Factual Background

D.E., a kindergartner living with his mother in Mansfield, appeared in school in April 2017 complaining of discomfort and pain in his arms and back. D.E.'s kindergarten teacher, Beth

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]In this opinion, we refer to the minor child by his initials to protect the child's identity. *See* TEX. R. APP. P. 9.10.

[3]*See* TEX. PENAL CODE ANN. § 22.04 (West Supp. 2018).

2

Hughes, testified that D.E. missed a day of school following a minor disciplinary incident.[4] When he returned the second day after the beating, Hughes noticed D.E. wearing "a big, baggy shirt, which was unusual because he always was dressed really nice, looked super cute." D.E. complained of significant pain in his arms and shoulders. When Hughes asked what was wrong, D.E. said he could not tell her, because his "mom said if [he] told [Hughes], [Hughes] would call the police." Hughes saw marks on D.E.'s arms. The marks "alarmed" Hughes because they "didn't look normal . . . from what [she had] seen before." On that basis, Hughes sent D.E. to the school counselor, Julia Rea.

Rea testified that D.E. told her Ezeh had beat him with a belt. Rea recounted that D.E. pulled his shirt up and she saw that "his entire back was covered in dark purple bruises[,] and the backs of his arms as well." D.E. told Rea he "had to stay on ice packs" the day before, accounting for his absence. Because Rea was concerned for D.E.'s safety, she contacted law enforcement, which began an investigation. Rea and Hughes both said the marks were the worst they had ever seen. Hughes had been teaching for twenty-nine years.

D.E.'s mother, Monica Adams, described her relationship with Ezeh as "co-parents."[5] She explained that, when she picked D.E. up from school each day, it was her regular practice to ask

---

[4]Two days before he returned, complaining of a sore back and arms, D.E. borrowed a crayon from a classmate. In thanks, D.E. kissed the classmate's finger. Hughes corrected D.E., reminding him that kisses and hugs were for family and that an appropriate way to thank his classmate was with a high-five. Hughes "didn't think twice" about the incident and did not document it as any kind of infraction. D.E. apparently thought he was in trouble and that Hughes had made a disciplinary notation. On the way home after school that day, he told his mother he had been in trouble. That led to Ezeh's beating of D.E., Ezeh's conviction, and this appeal.

[5]When asked if Ezeh lived with her and D.E. at the time of this incident, Adams answered, "His clothes were not there."

3

if he had been in trouble that day. On April 4, 2017, D.E. said, "Yes, I got in trouble." Adams said that D.E. was upset and started crying. She continued by explaining, "He knew that there was going to be consequences . . . ."

Later that evening, Ezeh arrived at the house, and Adams told him that D.E. had been in trouble at school. D.E. was in his bedroom. As Ezeh walked to the bedroom, he "started banging [his flip-flop shoe] on the couch." Ezeh went in D.E.'s room and closed the door. From the room, Adams heard yelling from Ezeh, D.E. apologizing, and a "smacking sound" like the flip-flop slapping something.

After a while, once Adams "felt there was a point where [Ezeh] had gotten his point across," she went into the bedroom. Adams found D.E. "crouched in the corner," "holding his legs," and Ezeh holding a belt. Adams was "[a]ngry" and "[u]pset" when she saw the marks left on D.E.'s back from Ezeh's beating. She drew D.E. a "mediocre bath" (i.e., neither hot nor cold) and put ice packs on his back. She held D.E. out of school the next day, feeling he needed "to stay home with [her] and have a mom day and a kid day." She testified, "I didn't want him to go to school." Adams admitted the marks "looked bad," and she "assumed" authorities would question the injuries if the school staff saw them.

As its final witness, the State called Donna Wright, who had a master's degree as a pediatric nurse practitioner. She held a graduate certification as a forensic nurse examiner and a post-master's certification in acute-care pediatric nursing. Wright worked on the Child Advocacy Resource and Evaluation (CARE) Team at Cook's Children's Hospital in Fort Worth for eighteen years, consulting and inquiring into "concerns of physical abuse, sexual abuse, negligen[ce], illicit

4

drug exposure, [and] medical child abuse" of children. Before that, she worked in the pediatric intensive care unit for almost five years.

Wright testified that she did not examine or meet D.E. She reviewed photographs of his injuries and offered to give her expert testimony about those injuries as seen in the photos. She testified that the patterns of bruising on D.E. suggested "a significant amount of force." She was concerned that the injuries across D.E.'s back could have put him at risk of kidney injury. The areas of D.E.'s injuries had less tissue padding than the thighs or buttocks. Injury to the muscles in his back put D.E. at risk of rhabdomyolysis.[6] Because of the comparative lack of fatty tissue in the back, explained Wright, the muscles in the back will release proteins when injured. This increases blood flow to the area which cannot be absorbed. This phenomenon could affect the kidneys' functioning, possibly leading to renal failure.[7]

## II.  Legally Sufficient Evidence Supports Ezeh's Conviction

In Ezeh's fourth point of error, he contends that the evidence was legally insufficient to support the jury's verdict.[8] We disagree.

---

[6]"[D]isintegration or dissolution of muscle, associated with excretion of myoglobin in the urine." *Rhabdomyolysis*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (30th ed. 2003).

[7]D.E. was seven years old at the time of trial. He testified briefly. D.E. said he did not remember the events of the beating or the events at school which led to the discovery of his injuries.

[8]Ultimately, we will overrule Ezeh's points of error alleging error in admission of Wright's testimony. That said, we consider all the evidence presented to the jury in conducting a sufficiency review. *See Lockhart v. Nelson*, 488 U.S. 33, 34 (1988); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) ("When conducting a sufficiency review, we consider all the evidence admitted, whether proper or improper.").

**A.      Standard of Review**

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917– 18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while deferring to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

**B.      Analysis**

As detailed above, there was ample evidence to support the jury's finding that Ezeh recklessly caused bodily injury to D.E., who was then younger than fourteen years old. D.E. was

a kindergarten student at the time of the incident. Ezeh was alone with D.E. in the room from which Adams heard yelling and "smacking" sounds. When she entered the room, D.E. was crouched in a corner, and Ezeh held a belt that had metal pieces on it. Because Adams saw significant injuries, she applied ice to D.E.'s back and held him out of school the following day. Ezeh's defensive theory was essentially that he was disciplining the child.[9] The jury saw photos of D.E.'s injuries; heard from school staff that, two days after the beating, he was in pain; and heard testimony that significant force would have been generated by hitting the boy with an object. There was, thus, enough evidence presented at trial to allow a rational jury to conclude that Ezeh recklessly caused bodily injury to D.E. Accordingly, we overrule Ezeh's fourth point of error.

## III.    No Rule 403 Error Shown

In his third point of error, Ezeh claims that Wright's testimony should have been excluded, because any probative value was substantially outweighed by the danger of unfair prejudice to Ezeh. We disagree.

### A.    Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own

---

[9]The jury charge included an instruction on the defense of reasonable discipline. *See* TEX. PENAL CODE ANN. § 9.61(a) (West 2011).

decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case.

*De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B.     Analysis

Despite its general admissibility, relevant evidence is subject to exclusion "if its probative

value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or]

misleading the jury . . . ." TEX. R. EVID. 403.  When a trial court is considering the application of

Rule 403 to challenged evidence, the court balances:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (footnote omitted).

Relevant evidence includes evidence having "any tendency to make a fact more or less

probable than it would be without the evidence." TEX. R. EVID. 401(a).  "Irrelevant evidence is

not admissible." TEX. R. EVID. 402.  Relevancy is decided by asking whether "a reasonable person,

with some experience in the real world[, would] believe that the particular piece of evidence is

helpful in determining the truth or falsity of any fact that is of consequence to the lawsuit."

*Montgomery*, 810 S.W.2d at 376.  The evidence does not have to prove or disprove a particular

fact to be relevant.  Instead, "it is sufficient if the evidence provides a small nudge toward proving

or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App.

8

2004). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403.

As to *Gigliobianco*'s first factor, the inherent probative force of Wright's testimony, the trial court could have reasonably concluded that her testimony had considerable probative force since she testified about the severity of the bruising on D.E. and the risks associated with Ezeh's conduct. As a result, Wright's testimony tended to make more probable a fact of consequence— Ezeh's mens rea—which was part of the jury's decision making.

As for the State's need for Wright's testimony, the State had established that Ezeh caused D.E.'s injuries. But Wright's testimony could have been offered to dispute Ezeh's defense—that his conduct was reasonable. She testified that the bruising patterns established that an object was used to beat D.E., which in turn suggested that Ezeh administered the beating with significant force. To that end, the trial court could have reasonably concluded that the State had some need for Wright's testimony.

The trial court could likewise have reasonably concluded that Wright's testimony had no tendency either to induce a jury verdict based on an improper basis or to distract or confuse the jury about the main issues of the case. This was not evidence of extraneous bad acts. Wright simply, based on her extensive experience in reviewing evidence of injuries to children, deduced and explained to the jury the type of injuries sustained by D.E. and the risks such injuries might entail. By the time Wright testified, the jury had heard substantial evidence that Ezeh hit D.E. with a belt or flip-flop. Wright's testimony essentially was offered to tie up the previous prosecution

9

evidence and suggest Ezeh acted with the requisite intent to establish the indicted mental state—intentionally or knowingly causing injury to D.E.

We also cannot say the jury was likely to give undue weight to Wright's testimony. It was made clear that she did not examine D.E. Rather, her conclusions were based on her experience and photos of D.E.'s injuries. Wright testified that the injuries put D.E. at risk of internal injuries, but made it clear that, sixteen months after the beating, D.E. had not suffered any internal complications from the injuries inflicted. Thus, the trial court could have reasonably concluded that the jury was capable of evaluating the probative force of Wright's findings.[10]

Finally, Wright's testimony did not consume an inordinate or unfair amount of time as part of the State's case-in-chief. The State presented six witnesses in a single day of guilt/innocence evidence. Fewer than twenty pages of direct examination (in the reporter's record) was used by the State in presenting Wright's testimony. In the face of around fifty-three pages of reporter's record spent on direct examination of the other witnesses for the State, we find that the trial court could have reasonably concluded that this was not an inordinate amount of time.

For these reasons, we find no abuse of discretion in the trial court's decision to allow Wright's testimony in the face of Ezeh's Rule 403 challenge. This point of error is overruled.

---

[10]Indeed, it may be posited that Wright's testimony was not considered too important by the jury, because it acquitted Ezeh of intentionally or knowingly injuring D.E. and instead convicted him of a lesser offense.

## IV.     No Error in Admitting Wright's Testimony

In Ezeh's first two points of error, he complains that the trial court erred in admitting Wright's testimony because it was either irrelevant or improperly offered a diagnosis of D.E.'s injuries.  We disagree.

### A.     Standard of Review

One complaining of erroneous admission of evidence must establish (1) an abuse of discretion by the trial court in admitting the evidence and (2) that the opponent's substantial rights were affected.  *See* TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

### B.     Analysis

First, Ezeh complains that the trial court erred in admitting Wright's testimony because it was irrelevant.  Relevant evidence includes evidence having "any tendency to make a fact more or less probable than it would be without the evidence."  TEX. R. EVID. 401(a).  "[I]t is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart*, 129 S.W.3d at 96.

In this case, Wright reviewed photographs of D.E.'s injuries and offered her expert testimony about those injuries as seen in the photos.  She testified that the patterns of bruising on D.E. suggested that Ezeh used "a significant amount of force" when he hit D.E. with the belt.  As a result, Wright's testimony was relevant toward proving a fact of consequence—the severity of injuries inflicted by Ezeh upon D.E.  Since this evidence was relevant, we need not address harm. For these reasons, we overrule Ezeh's first point of error.

11

Ezeh also claims Wright was not qualified to offer a diagnosis of risks to D.E. from the beating Ezeh administered. Yet, Wright offered no diagnosis during her testimony. She testified that she never met or treated D.E. Instead, she reviewed photos of the bruising D.E. sustained. From those photos, and based on her training and experience, she testified about internal injuries that the child could have suffered as a result of the injuries. But she also made it clear that D.E. did not, in fact, suffer those possible internal injuries.

As for Wright's qualifications, we previously summarized her education and decades of experience in the field of pediatric nursing. As an example, Wright held a graduate certification as a forensic nurse examiner and a post-master's certification in acute-care pediatric nursing. We therefore cannot say the trial court abused its discretion in finding Wright qualified to testify about her review of D.E.'s injuries.

Even had the trial court abused its discretion regarding Wright's qualifications, we find Ezeh's substantial rights were not affected. The most obvious indication of this is that the jury acquitted Ezeh of the more serious crime, intentionally or knowingly causing injury to D.E., and only convicted him of the lesser offense of recklessly causing injury. Based on a review of the entire record, we are confident that error, if any, in the admission of Wright's testimony did not have a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). As a result, we overrule Ezeh's second point of error.

## V.      Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:      January 10, 2019
Date Decided:        March 13, 2019

Do Not Publish